· CHARLES O. NICKERSON *et al.*, Plaintiffs in Error, *v.* AMOS BABCOCK, Defendant in Error.

### ERROR TO FULTON.

Where it appears that A, and others, gave their note to B, to satisfy a debt due from C, and that the note was usurious; any pretense that it was otherwise will not avail the payee.

THIS was an action of assumpsit. The first count of the declaration sets forth, that plaintiffs in error, on the 9th of February, 1857, at, etc., made their promissory note and promised to pay the defendant in error, by the 15th of January, 1858, the sum of $753.68, for value received, and then and there delivered, etc.

The usual money counts were added.

The plaintiffs in error plead the general issue; also several special pleas.

Pleas five and six were as follows:

*Plea* 5. " And the said defendants, for further plea to the said declaration, say *actio non* as to all the sum specified in said promissory note, except $428, because they say that the said plaintiff, in taking the said promissory note, in the said declaration described, did contract to receive a greater rate of interest than ten per cent., to wit, the sum of fifteen per cent. on the sum actually due, and the said defendants aver that the said rate of interest on a large sum, to wit, the sum of two thousand dollars, was included in said promissory note mentioned in the declaration. And this they are ready to verify," etc.

*Plea* 6. " And the said defendants, for further plea in this behalf to the declaration, say *actio non* as to all of the sum specified in said promissory note, except $428, because they say that at the time of the taking of the promissory note, in the declaration described, on which this suit is brought, that the principal sum actually due from the defendant at the time specified in such note for the payment thereof, was the sum of four hundred and twenty-eight dollars, and the remainder of the sum specified in said promissory note, was and is for interest alone, and that the rate is greater than ten per cent. per annum, on the principal sum due, and this the defendants are ready to verify," etc.

The defendant in error replied to the fifth plea, that " said plaintiff, in taking the said promissory note sued on, did not contract with the said defendants to take and receive from them a greater rate of interest than ten per cent. per annum upon any sum of money due."

36

And to the sixth plea, that " the sum actually due from defendants to plaintiff, was the amount specified in said note, and not the sum of $428, as alleged in said plea, and that the remainder of said note over and above $428, was not for interest alone, and that the rate reserved upon the principal sum due, was not greater than ten per cent. per annum."

There was an issue to the country.

On the trial the plaintiff below offered in evidence the following instrument in writing:

" $753.68.   By the fifteenth day of January next, 1858, we jointly and severally promise to pay Amos Babcock, or order, seven hundred and fifty-three 68-100 dollars, for value received; and we further agree, if the above note is not paid without suit, to pay ten dollars additional to the above, for attorney fees.

C. O. NICKERSON.<br>JAMES ROBB.

*Canton, February* 9, 1857.                    JOHN J. FAST."

To which defendants objected, but the court overruled the objection and allowed it to be read.

The plaintiff rested.

The defendants below then produced *Charles O. Nickerson,* who testified that the note read in evidence, was one of five executed by him as principal, and the other defendants as his securities, and the first falling due.   The first note was for $753.68; second for $689.08; third for $624.48; fourth for $559.88; and fifth for $495.28; they become due each year. The plaintiff held two notes, bearing date in November, 1855, executed by Madison Head to Erastus Carrier, and assigned to plaintiff, each for $1,000, one due January 1, 1857, and the other January 1, 1858, both with interest after January 1, 1856, at seven per cent., and which were secured by a mortgage on a quarter section of land.   Nickerson agreed with Head to pay the mortgaged land, and to take up these notes and mortgage held by plaintiff; after fixing on the terms of the trade with Head, the trade was left open for Nickerson to obtain the notes and mortgage from the plaintiff, and no writings were then executed.

Nickerson then took the defendant, James Robb, with him, and called on the plaintiff, at his residence, east of Canton. Nickerson wanted plaintiff to *wait* for the payment of the money, which the plaintiff was willing to do.   Nickerson wanted five years to make payment of the whole sum, which the plaintiff was willing to grant, if Nickerson would take the sum then due, and divide it into five equal sums, and compute the interest at the rate of twenty per cent. per annum on the whole sum due for one year, and add the interest to one-fifth of the whole sum, to constitute the first note, and then compute the interest

at the rate of twenty per cent. per annum for the next year on the balance, and add to the one-fifth of the whole sum, to constitute the second note, and so on, as to the other payments. Nickerson was willing to accede to the terms, except as to the rate of interest, and proposed to give twelve instead of twenty per cent. Several hours were spent in trying to agree on the rate of interest. The only question of difference was as to the rate of interest, and the plaintiff and Nickerson finally agreed, upon fifteen per cent. per annum, and that Nickerson was to give his notes with defendants, Robb and Fast, as securities.

Nickerson further testified, that the amount due, down to January 1, 1857, on Head's notes, was $2,140 ; they divided that into five equal parts, each $428, and computed fifteen per cent. interest on $2,140 for one year, making $321, and added that to $428, producing $749. Other payments were found, in a similar manner as agreed on.

Nickerson afterwards concluded that he wanted fifteen days longer time for each payment, to which plaintiff agreed, and directed his clerk to compute interest at the rate of fifteen per cent. per annum for fifteen days on each of the sums fixed on before, namely, on $749 for fifteen days at fifteen per cent. per annum, making $4.68, and added to $749, producing $753.68, the amount of the first note, which is the one read in evidence; all the other notes were fixed in same way. Nickerson and the other defendants signed them, and in a day or two returned to plaintiff and delivered the five notes to him, and the plaintiff gave up the two notes and mortgage on Head, to Nickerson. Nickerson then took the two notes and mortgage to Head, and gave them up to him, and Head conveyed the mortgaged land to Nickerson.

The parties agreed on $2,140 as the basis of the computation. Nickerson did not recollect that there was anything said about buying the notes on Head, but he had agreed to take up the notes, and was unable to raise the money to pay the one then due, or to meet the other when it should become due ; he wanted more time to pay, and the only difference between the plaintiff and Nickerson was as to the rate of interest.

The defendants then proved by *James Robb*, that he went with Nickerson, at his request, to see plaintiff; at that time one of the notes on Head had been sued. Nickerson wanted to lift the notes on Head, and the witness represented to plaintiff that both Head and Carrier were poor, and he would get nothing but the mortgaged land by foreclosure. The land was not worth over $1,000, in his opinion, but was worth more to Nickerson than any one else, because it joined him. The witness was mainly anxious to have the notes taken up, on account of

Carrier, as he thought the land would not satisfy the debt, and it would leave Carrier liable for the balance.

The plaintiff and Nickerson made the arrangement about taking up the notes and giving other notes; the witness had no interest in it, but signed the notes as security.

Nickerson wanted time for the payment, and plaintiff was not willing to grant it, unless he got twenty per cent. interest; he said that money was worth at least that much. Nickerson offered twelve per cent. They spent several hours in chaffering about the rate of interest; they finally settled on fifteen per cent. as the proper rate of interest for the extension of time.

The plaintiff was then produced and sworn as a witness, and testified that he held two notes, etc., as stated by Nickerson.

The defendants, Nickerson and Robb, called to see him in February, 1857, to negotiate for the notes and mortgage. Nickerson wanted time to pay the money, and offered twelve per cent. per annum to get the time. This was refused, and plaintiff stated to him that he had been offered two and a half per cent. a month for money, and it was worth that much. There was considerable talk; plaintiff proposed to take twenty per cent., and Nickerson refused to give it. After they had talked two or three hours, while Nickerson and Robb were in an adjoining room, he overheard one say to the other, that if they could make the arrangement it would save something to Head, and he was poor. The plaintiff went into the room where they were, and told Nickerson that he guessed he could stand it, and that he would take fifteen per cent. per annum, to which Nickerson agreed.

They then computed the interest in the manner testified by Nickerson. One of the notes was in the hands of Barrere, an attorney, and suit had been commenced on it, and they agreed that the suit should be dismissed, which was afterwards done.

After making the agreement and computation, the plaintiff told Nickerson that he considered it a trade or exchange of paper, and wanted it so understood, and not as a money transaction, to which Nickerson made no reply.

Nickerson brought the prepared notes back in a day or two, signed by the defendants, and the witness then gave the two notes on Head and the mortgage to Nickerson, who wanted them assigned to him, he said, so that he would be safe with Head, and the plaintiff did assign them, without recourse.

On cross-examination, the plaintiff said that he told them money was worth two and a half per cent. premium; that he called the rate premium in such cases and not interest; and that after the terms of the agreement were fixed upon, he stated to

Nickerson that this was an exchange of paper, and that Nickerson did not dissent, or assent, but was silent. ·

The jury found a verdict for the plaintiff, and assessed the damages at $790.64, the full amount of the note and interest.

The defendants moved for a new trial, which was overruled, and the defendants excepted.

Judgment was rendered on the verdict by BAILEY, Judge.

GOUDY, JUDD & BOYD, for Plaintiffs in Error.

C. L. HIGBEE, for Defendant in Error.

CATON, C. J. The substantial question in this case is, whether this was an exchange of paper between the parties; whether Nickerson purchased the notes and mortgage given by Head, and the debt evidenced thereby, and gave in payment therefor the note on which this action is brought, and the other notes given at the same time, or whether these notes were given for a debt which Nickerson had agreed to pay to Babcock, upon a forbearance of that debt till the times specified in these notes.

The evidence shows clearly, to our minds, that the notes were given for a debt which Nickerson had agreed to pay to Babcock, and were taken by him in payment of that debt. Nickerson had agreed with Head to purchase of him the mortgaged premises, and to take up these notes and mortgage as a part payment. Upon this point there is no contrariety of testimony and no dispute, nor is there any question that Babcock fully understood this to be the state of facts. The whole negotiation, between Nickerson and Babcock, was for an extension of time for the payment of the mortgage debt, then due, and of the rate of interest, or ·measure of computation, which Nickerson should pay Babcock for the extension of time, one asking twenty per cent. and the other offering twelve per cent. per annum, and they finally agreed upon fifteen per cent. per annum ; upon which basis the settlement was made and these notes given. It is true, that after the basis of the arrangement was agreed upon, Babcock told Nickerson that he wanted it understood that it was an exchange of paper, and not a money transaction, to which Nickerson made no reply ; even had Nickerson expressly agreed to this, it could not have changed the real character of the transaction ; and the proposition itself shows that Babcock fully appreciated that it was an usurious transaction, and felt the necessity of giving it some color, which would avoid the consequences attaching to its true character. Nor did the assignment of the notes and mortgage to Nickerson, instead of canceling and destroying them, change the legal effect of the transac-

tion. The debt was as effectually paid, and the notes and mortgage as much destroyed, by the giving of the new notes, as if they had been actually canceled at the time. Were this an action upon those notes, by Nickerson against Head, no one will pretend that the plaintiff could recover upon the facts here established; and yet that is the real question in this case. If Nickerson had agreed to take up and satisfy these notes and mortgage, or took the land subject to the mortgage, which is the same thing, then the giving of the new notes and the surrender of the old ones and the mortgage, was a complete extinguishment of the latter, in pursuance of such agreement, and this was done with the full knowledge and approbation of Babcock. He made the arrangement with Nickerson with a full knowledge of the character of the arrangement between Nickerson and Head, and with the view of consummating it. There can be no pretense that Nickerson understood it one way and Babcock another, or that Babcock supposed that Nickerson was purchasing the notes and mortgage to hold them as a subsisting debt against Head. Both knew and understood that Nickerson had assumed to pay off and discharge them, and that after the new notes were given, the old debt due from Head was satisfied.

We think the verdict was wrong, and that a new trial should have been granted. The judgment is reversed, and the cause remanded.

*Judgment reversed.*